## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| PERKINS & MARIE CALLENDER'S, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. _____ |
| v. | ) | |
| | ) | |
| 5171 CAMPBELLS LAND CO., INC., | ) | |
| WILLIAM T. KANE, and KRISTINE | ) | |
| KOCHIS, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

Perkins & Marie Callender's, LLC ("PMC," or "Plaintiff"), by and through counsel, file this Verified Complaint against Defendants 5171 Campbells Land Co., Inc. ("Defendant CLC"), William T. Kane ("Defendant Kane"), and Kristine Kochis ("Defendant Kochis") (collectively, "Defendants") for, among other requests, monetary damages and enforcement of certain restrictive covenants, and alleges as follows:

### I.        THE PARTIES

1.        PMC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located in Memphis, Tennessee.

2.        Defendant CLC is a Pennsylvania corporation whose principal place of business is located at 535 Smithfield Street, Suite 1300, Pittsburgh, PA 15222.

3.        Upon information and belief, Defendant Kane and Defendant Kochis are citizens of Pittsburgh, Pennsylvania for jurisdictional purposes.

## II.        JURISDICTION AND VENUE

4.        This Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121, as it involves federal trademark law under the Lanham Act; under 18 U.S.C. § 1836, et seq., as it is a civil action arising under the Defend Trade Secrets Act; and under 28 U.S.C. § 1331 as it involves a federal question.

5.        This Court further has supplemental or pendant jurisdiction over PMC's state law claims because the claims are so related to PMC's federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.  *See* 28 U.S.C. § 1367.

6.        This Court has personal jurisdiction over Defendants because, in the course of operating the Perkins franchised restaurants at issue, Defendants through their agent Defendant Kane a meeting with PMC in Memphis, Tennessee and directed Defendants' business activities into Memphis, Tennessee in order to execute the franchising License Agreements and their Attachments, Addendums, and Amendments entered into between the Parties.

7.        Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2).

## III.        THE CONTROVERSY

A.        **The PMC System and Marks**

8.        Since 1958, PMC and or its predecessors-in-interest and through its licensees has developed a business system for establishing, operating, and licensing distinctive, fast-casual restaurants serving the public under the name "PERKINS" or "Perkins®" (and Design) (hereinafter referred to collectively as "Perkins").

4845-9036-8411v6
2012648-000004

9.      The food, beverage, and other products served and sold by Perkins restaurants are prepared in accordance with PMC's unique techniques, special equipment and processes, standards and specifications, products, and other methods (the "System").

10.      Each restaurant is also designed pursuant to PMC's plans and specifications for construction, conversion, remodeling, decorating, equipment and layout, and is operated in accordance with PMC's distinctive business formats, construction plans, inspection and consultation programs, signs, flags, equipment, layouts, methods, specifications, standards, recipes, confidential information, trade secrets, operating procedures, training programs and materials, guidance, policy statements and related materials, designs, advertising, publicity, marketing programs, and other materials.

11.      On June 7, 1966, PMC obtained from the United States Patent and Trademark Office ("USPTO") a federal trademark registration for its Perkins trademark, U.S. Registration No. 809,680 for use on "restaurant services."  A true and correct copy of U.S. Registration No. 809,680 is attached as **Exhibit 1**.

12.      In addition, PMC owns, uses, promotes, and licenses certain federally-registered trade names, trademarks, service marks, and other commercial symbols and applications related thereto, including some of the relevant U.S. trademark registrations listed in the table below:

| Registration No. | Trademark | Goods | Date of First Use and Date of First Use in Commerce |
|---|---|---|---|
| **2,490,366** | PERKINS   RESTAURANT   &   BAKERY | Bakery Products, Restaurant Services | First use - April 26, 1999;  First use in commerce - April 26, 1999 |

| | | | |
|---|---|---|---|
| **2,492,247** | | Bakery Products, Restaurant Services | First use - April 26, 1999; First use in commerce - April 26, 1999 |
| **1,464,960** | | Restaurant and Bakery Services | First use - Dec. 6, 1985; First use in commerce - Dec. 6, 1985 |
| **1,403,560** | | Restaurant and Bakery Services | First use - Dec. 2, 1985; First use in commerce - Dec. 2, 1985 |
| **1,403,558** | | Restaurant Services | First use - Dec. 2, 1985; First use in commerce - Dec. 2, 1985 |
| **1,231,484** | | Providing Restaurant Services | First use - Dec. 2, 1980; First use in commerce - Dec. 2, 1980 |

| 1,203,149 |  | Restaurant Services | First use - March 5, 1979; First use in commerce - March 5, 1979 |
|---|---|---|---|

13.     True and correct copies of the PMC trademark registrations for Perkins set forth in the above table are attached hereto as collective **Exhibit 2**.

14.     PMC's trademarks are hereinafter collectively referred to as the "Marks."

15.     There are 371 Perkins restaurants operated in 32 states and five Canadian provinces.  The Perkins system includes 117 company-owned and operated restaurants and 254 franchised units.  PMC has invested substantial time, skill, effort, and money in developing, promoting, and advertising its unique System and in the development and protection of its Marks and trade names.

16.     As a result of PMC's advertising, marketing, promotional, and other efforts, the Perkins' Marks have gained widespread recognition and customer goodwill for providing the highest standards of quality and hospitality in the restaurant industry.

17.     PMC provides its unique services to the general public through authorized licensees/franchisees through licensing agreements.

18.     Defendants are and/or were among the system of authorized licensees and, after attending PMC's training course, utilized the benefits of the PMC Marks and System in operation of their Perkins licensed units in territories that included the states of the State of Ohio, the Commonwealth of Pennsylvania, and the State of New York.

4845-9036-8411v6
2012648-000004

B.       **The License Agreements**

19.       On February 13, 2017, Unique Ventures Group, LLC ("Unique" or the "Debtor") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code at Case No. 17-20526-TPA in the United States Bankruptcy Court of Western Pennsylvania (the "Bankruptcy Case").

20.       The Debtor was licensee of twenty-eight (28) Perkins restaurants pursuant to License Agreements by and between the Debtor and Perkins (the "Unique License Agreements").

21.       On March 23, 2017, M. Colette Gibbons (the "Trustee") was appointed as the Chapter 11 Trustee for the Debtor.

22.       Among other things, the Trustee was charged with the responsibility of selling the Debtor's assets which consisted primarily of the Unique License Agreements.

23.       On October 30, 2017, the Trustee filed a motion to sell and assign substantially all of the Debtor's assets, including the Unique License Agreements.

24.       At a hearing and auction conducted by the judge in the Bankruptcy Case, on January 9, 2018, CLC was identified as having submitted the highest and best offer for the Debtor's assets.

25.       Final approval of the sale was delayed until an additional hearing on January 24, 2018.

26.       On January 29, 2018, an order was entered in the Bankruptcy Case approving the sale of substantially all of the Debtor's assets, including the Unique License Agreements, to CLC.

4845-9036-8411v6
2012648-000004

27.     According to reports from the Trustee, on the eve of closing scheduled for January 30, 2018, it appeared that CLC (a) lacked sufficient cash to close the transaction, (b) failed to timely deliver a letter of credit required by the Asset Purchase Agreement by and between CLC and the Trustee (the "APA") and (c) was unable to pay cure costs and assumed liabilities required by the APA.

28.     The Trustee and CLC engaged in substantial negotiations to allow for a closing which ultimately occurred on February 13, 2018.

29.     In connection with this closing, on behalf of CLC, Defendant Kane signed twenty-seven (27) License Agreements (one "Agreement" or the "Agreements") with PMC for non-exclusive licenses to operate twenty-seven (27) Perkins franchise units in Ohio, Pennsylvania, and New York.

30.     With the Agreements, Defendant Kane also signed the Disclosure Acknowledgement Statement as "Attachment A" to the Agreements, and Defendants Kane and Kochis signed the Guarantee and Assumption of Licensee's Obligations as "Attachment B" to the Agreements (the "Guaranty"). Additionally, the Parties executed an Addendum and an Amendment to the Agreements.

31.     As a result of this Guaranty, the contractual obligations set forth in the Agreements apply equally to Defendants Kane and Kochis.

32.     Each of the Licensing Agreements, Attachments, Addendums, and Amendments contain identical language defining the terms, conditions, rights, and obligations between the Parties.

4845-9036-8411v6
2012648-000004

33.    The Licensing Agreements permitted CLC to operate their Perkins units at the following locations in Ohio, Pennsylvania, and New York, identified by store numbers and names (the "Restaurant" or, collectively, the "Restaurants"):

| Store | Name | City/State |
|-------|------|------------|
| 2474 | Warren (Niles) | Warren, OH |
| 2537 | New Castle | New Castle, PA |
| 3346 | Clarion | Clarion, PA |
| 3382 | Ashland | Ashland, OH |
| 3383 | Ashtabula - Prospect | Ashtabula, OH |
| 3388 | Canfield - E Main Street | Canfield, OH |
| 3448 | Titusville - Central Ave. | Titusville, PA |
| 3458 | Erie - East | Erie, PA |
| 3459 | Erie - South | Erie, PA |
| 3460 | Erie - West | Erie, PA |
| 3463 | Greenville - Hadley Road | Greenville, PA |
| 3464 | Grove City - W. Main Street | Grove City, PA |
| 3466 | Indiana | Indiana, PA |
| 3474 | Hermitage (Sharon) | Hermitage, PA |
| 3495 | Warren - Elm Rd. | Warren, OH |
| 3523 | Corry - Columbus Ave. | Corry, PA |
| 3525 | Bradford - Bolivar Dr. | Bradford, PA |
| 3531 | Olean - State Street | Olean, NY |
| 3572 | Warren - Ludlow St. | Warren, PA |
| 3573 | Conneaut - Rt 20 W Conneaut Pl | Conneaut, OH |
| 3604 | Meadville | Meadville, PA |
| 3670 | Youngstown - Boardman | Youngstown, OH |
| 3709 | Middleburg Heights (Cleveland) | Middleburg Heights, OH |
| 3730 | Mars (Cranberry Township) | Cranberry Township, PA |
| 3731 | Canton | Canton, OH |
| 3794 | Austintown | Austintown, OH |
| 3844 | Brooklyn | Brooklyn, OH |

34.    In order to provide with this Complaint a representative Licensing Agreement from each state in which CLC was licensed to operate a Perkins Restaurant, true and correct copies of the Licensing Agreements, Attachments, Addendums, and Amendments for Ashtabula

4845-9036-8411v6
2012648-000004

- Prospect (OH), Grove City - W. Main Street (PA), Olean - State Street (NY), are attached hereto as collective **Exhibit 3**.

35.     The Agreements gave CLC non-exclusive licenses to operate the Restaurants and to use the PMC System and the Marks in their operation, under specific terms and conditions which created specific rights and obligations.

36.     Under Section 4.A. of the Agreements, Defendants acknowledged that their right to use the Marks was derived from the Agreements and was limited to their operation of the Restaurants pursuant to and in compliance with the Agreements.  Further, Defendants agreed that all of their usage of the Marks and any goodwill established by their use of the Marks was to the exclusive benefit of PMC.

37.     Under Section 6. of the Agreements, Defendants acknowledged and agreed that PMC possessed certain confidential and proprietary information and trade secrets (defined in the Agreements as the "Confidential Information") consisting of, but not limited to,

>    (1)     methods and procedures relating to the development and operations of Perkins restaurants, whether contained in the Operations Manual or otherwise;
>
>    (2)     secret recipes and flour and other mixes, menu analysis, and methods of preparation of Products and services offered in Perkins restaurants;
>
>    (3)     methods, procedures, and techniques for preparing, packaging, marketing, selling and delivering Products and services offered in Perkins restaurants;
>
>    (4)     knowledge of test programs, concepts, and results relating to the planning, development and testing of the System and Products and services offered in Perkins restaurants;
>
>    (5)     sources of purchase of food, beverages and other ingredients used by Perkins restaurants;
>
>    (6)     marketing programs and image; and

4845-9036-8411v6
2012648-000004

(7)    methods, techniques, specifications, procedures, information, systems and knowledge of and experience in the development, licensing, and operation of Perkins restaurants.

38.    Also under Section 6., Defendants agreed PMC has invested a substantial amount of money and time in developing the Confidential Information.  They also agreed that the Confidential Information is a valuable asset of PMC's System and includes trade secrets, all of which warranted Defendants' agreeing to prevent unauthorized use or disclosure of the Confidential Information.

39.    Under Section 7.A. of the Agreements, Defendants agreed to pay a royalty fee to PMC every week based on each Restaurant's Gross Sales from the previous week.  Defendants also agreed that all royalty fees, Marketing Fund contributions (as described in Section 9.), amounts due for purchases from PMC or its subsidiaries or affiliates, and other amounts owed would accrue interest on the first day of the month or period, whichever were applicable, immediately following the date such amounts were due at the highest applicable legal rate for open account business credit, not to exceed one and one-half percent (1.5%) per month or period. Defendants further acknowledged that their failure to pay all amounts when due would constitute grounds for PMC to terminate the Agreements.

40.    Under Sections 8.A. and 8.C. of the Agreements, Defendants agreed to conduct their Perkins franchised Restaurants in a manner that would preserve and enhance the goodwill associated with Perkins' Marks and System, including offering high quality food service and observing the highest standards of cleanliness and sanitation;

41.    Specifically, under Section 8.C.1. of the Agreements, Defendants agreed that they would purchase Perkins proprietary flour, pancake, cookie, muffin, and other mixes and batters

developed with secret recipes and formulas, only from PMC or a third party licensed to prepare and sell such products.

42. Under Section 8.D. of the Agreements, Defendants acknowledged that the operation of the Restaurants in compliance with Perkins' high standards is important to both Perkins/PMC and all other Perkins restaurant franchisees, and Defendants agreed to comply with all mandatory specifications, standards, and operating procedures relating to appearance, function, cleanliness, sanitation, and safety. Additionally, under Section 8.E. of the Agreements, Defendants agreed to operate the Restaurants in full compliance with all applicable laws, ordinances and regulations, including and without limitation to all government regulations relating to health and sanitation, and to refrain from any business or advertising practice which may be injurious to the business or goodwill associated with the Marks and other Perkins restaurants.

43. Regarding the defined terms of Reports, Financial Statements, and Financial Condition, Section 10. of the Agreements required Defendants to provide within specified amounts of time a report of Gross Sales, a profit and loss statement, a fiscal year-end balance sheet, income statement, and statement of changes in financial position of the Restaurants.

44. Under Section 10., Defendants also agreed that, if at any time they were delinquent in the payment of any amount owed to Perkins or its affiliates, they would, upon request, furnish PMC with income statements and balance sheets for such period and as of such dates and all in such detail as requested.

45. Section 14.A. of the Agreements governs the Termination of the License and provides that in the event of a breach, and unless cured to PMC's satisfaction, the Agreements

would terminate 30 days from the date notice was given if the licensee or any guarantor, for example:

(1)        failed to pay royalty fees, Marketing Fund contributions, or any other amounts due to PMC or its affiliates or subsidiaries;

(2)        failed to comply with any other provision of the Agreement or any mandatory specification, standard, or operating procedure unless, however, such failure could not reasonably be corrected within such thirty (30) day period and Defendants undertook within ten (10) days after such written notice was delivered and Defendants diligently thereafter continued efforts to bring the Restaurant and its Premises into full compliance, and to furnish proof accepted to PMC of such efforts and the date by which full compliance would be achieved; [or]

(3)        made any material misrepresentation regarding Defendants' organizational or financial structure or financial condition.

46.    Section 14.B.11. of the Agreements states that unless PMC has notified Defendants in writing to the contrary after discovering the relevant facts, the Agreements would terminate automatically and immediately without further action or notice if CLC failed on three (3) or more separate occasions, for which notices of default were given, within any period of twelve (12) consecutive months to comply with the Agreements whether or not such failures to comply were corrected after notice of default as given, or fail on two (2) or more separate occasions, for which notices of default were given, within any period of twelve (12) consecutive months to comply with the same obligation under the Agreement whether or not such failures to comply are corrected after notice of default is given; or, under section 14.B.12., if CLC breached a material obligation, representation, or warranty contained in the Agreements and such breach by its nature was incurable.

47.    Section 16. of the License Agreements contains the following restrictive covenants and rights and obligation upon termination or expiration of the Agreements:

16.   COVENANT NOT TO COMPETE; RIGHTS AND OBLIGATIONS OF COMPANY AND LICENSEE UPON TERMINATION OR EXPIRATION OF THE LICENSE.

    A.   SEVERABILITY AND SUBSTITUTION OF VALID PROVISIONS.

You acknowledge and agree that we have invested a substantial amount of time and money in developing the System, the Marks, and the Confidential Information and that we would be unable to protect our System, the Marks, Confidential Information and trade secrets against unauthorized use or disclosure and would be unable to encourage a free exchange of ideas and information among us and our licensees if prospective licensees or licensees were permitted to hold interests in or perform services for any competing business and that the following restrictions are reasonably required in order to protect our information, marketing strategies, operating policies and other elements of the System from unauthorized appropriation . . . . You understand and acknowledge that the determination of any similarity to or competition with Perkins restaurants is dependent on many factors including, but not limited to, marketing strategies; menu; guest check average; size, configuration, decor and "trade dress" of the restaurants; operating methods and policies; target audience demographic profile; and hours of service. You further understand because of the possibility of changes in the System and the emergence of new unforeseen competing restaurant concepts, that determining whether or not any competing restaurant business is the same or similar to Perkins restaurants will depend on the facts and circumstances existing at the time such determination is made. You further agree that for a period of two (2) years after the termination or expiration of this Agreement, you and all of such persons will be subject to the same restriction on competing activities within the trade area (the "Trade Area") of the Restaurant or within the trade area (as reasonably determined by us) of any Perkins restaurant operated by us or any other licensee of ours, but in no event within a radius of three (3) miles from any such restaurant. The Trade Area is that area contained within a 3 mile radius of the Restaurant. You acknowledge that the determination of the Trade Area is based on many factors, some of which are subjective, and that the Trade Area as described in this Agreement is reasonable under the circumstances. For purposes hereof, an indirect interest will be presumed to exist if such interest is that of the spouse or of a parent or child of another person, in addition to other forms of indirect or beneficial interests . . . .

    B.   PAYMENT OF AMOUNTS OWED TO COMPANY.

You must pay to us within fifteen (15) days after the effective date of termination or expiration of this Agreement, or such later date that the amounts due to us are determined, all royalty fees, Marketing Fund contributions, amounts owed for your purchases from us or our subsidiaries and affiliates, predecessors, successors and assigns, interest due on any of the foregoing, and all other amounts owed to us or our subsidiaries and affiliates under this Agreement or otherwise.

4845-9036-8411v6
2012648-000004

C.    MARKS AND SYSTEM.

You agree that immediately after the termination or expiration of this Agreement, you will:

(1)    not directly or indirectly at any time or in any manner identify yourself or any business as a current or former Perkins restaurant, or as a franchisee or licensee of, or as otherwise associated with us, or use any Mark or any colorable imitation thereof in any manner or for any purpose, or utilize for any purpose any trade name, trade or service mark or other commercial symbol that suggests or indicates a connection or association with us;

(2)    remove from the Premises and discontinue using for any purpose the oversized American flag and the bakery display cases;

(3)    remove from the Premises, discontinue using for any purpose and return to us (or  with our consent, destroy) any and all signs, flags, menus, fixtures, furniture, furnishings, equipment, advertising, materials, stationery supplies, forms or other articles that display or contain any Mark or that otherwise identify or relate to a Perkins restaurant;

(4)    remove all Marks that are affixed to uniforms and/or, at our direction, cease to use all uniforms that have been used in the Restaurant;

(5)    take such action as may be required to cancel all fictitious or assumed name or equivalent registrations relating to your use of any Mark;

(6)    change the telephone number of the Restaurant and direct the telephone company to provide a recorded message advising callers that the prior number is no longer  in  service,  and  instruct  all  telephone  directory publishers to modify all telephone directory listings of the Restaurant associated with any Marks when the  directories are next published;

(7)    terminate or assign to us, as we may elect, any website that identifies you as currently or formerly associated with us or that displays any Mark, as well as any domain name of such website, and you acknowledge that we shall have the sole right to any such domain name;

(8)    take such action to alter the physical interior and exterior decor of the Restaurant (specifically including, but not limited to, removing distinctive architectural features of or on the building) as will effectively de-identify and distinguish the Premises from the System; and

(9)    furnish to us, within thirty (30) days after the effective date of termination or expiration, evidence satisfactory to us of your compliance with the foregoing obligations.

In the event that you fail to take such actions as required above to   our satisfaction within thirty (30) days of termination or expiration of this Agreement, you grant us the right to enter the Premises to remove all items bearing the Marks and take such actions as we deem necessary to de-identify the Restaurant from the System without committing any trespass or incurring any liability for such actions. You acknowledge and agree that you will be responsible for all costs and expenses that we incur in taking such actions.

        D.      <u>CONFIDENTIAL INFORMATION</u>.

You agree that upon termination or expiration of this Agreement, you will immediately cease to use in any business or otherwise any of our Confidential Information disclosed to, or otherwise learned or acquired by you, and that you will return to us all copies of the Operations Manual and all other Confidential Information which we have loaned or made available to you or which is otherwise in your possession. You must also provide us with any and all supplies of our flour and other proprietary mixes for which you will be compensated at the lower of their cost or market value.

        E.      <u>CONTINUING OBLIGATIONS</u>.

All obligations of the Company and Licensee which expressly or by their nature survive the expiration or termination of this Agreement shall continue in full force and effect subsequent to and notwithstanding its expiration or termination and until they are satisfied in full or by their nature expire.

48.      Section 18. of the Agreements governs and is titled Enforcement.  Under Section 18.D., Defendants agreed that PMC has the right to preliminary injunctive relief to restrain any conduct by Defendants in the development or operation of each Restaurant that could materially damage the goodwill associated with the System, the Marks, and Perkins restaurants.  Defendants further agreed that PMC is not required to post a bond to obtain injunctive relief.

49.      Section 18.B. of the Agreements is the Waiver of Obligations clause.  It provides that the Parties may unilaterally waive or reduce any obligations or restriction under the Agreements without prejudice to any other rights that the respective Party may have, will be subject to continuing review, and may be revoked, in the good faith exercised in PMC's sole

discretion, at any time and for any reason, effective upon delivery of ten (10) days' prior written notice.

50.     Continuing, Section 18.B. provides that neither Party shall be deemed to have waived or impaired any right, power, or option reserved by the Agreements by virtue of any custom or practice of the parties at variance with the terms of the Agreements; any failure, refusal, or neglect by either Party to exercise any right under the Agreements to insist upon exact compliance by the other with its obligations thereunder, including, without limitation, any mandatory specification, standard, or operating procedure; any waiver, forbearance, delay, failure, or omission by PMC to exercise any right, power, or option, whether of the same, similar or different nature, with respect to any other Perkins restaurant; or the acceptance of PMC of any payments from CLC after any breach of the Agreements.

51.     Under Section 18.F. of the Agreements, Defendants agreed that the prevailing party in any proceeding to enforce or interpret any provision of the Agreements shall be entitled to reimbursement of that party's costs and expenses, including but not limited to, reasonable accounting and attorney's fees.

52.     Section 18.G. of the Agreements provides that except to the extent governed by the Trademark Act of 1946 or other federal law, the Agreements and licenses granted thereunder shall be governed by Tennessee law without regard to conflicts of laws rules.  Section 18.G. contains a choice-of-forum clause designating this Court and Tennessee state courts in this District as the exclusive forum for any dispute related to or arising out of the Agreements. Defendants also agreed to irrevocably submit to the jurisdiction and venue of this Court.

4845-9036-8411v6
2012648-000004

53.     In addition, Defendants Kane and Kochis signed the Guaranty as an attachment to each Restaurant's Agreement.   Under the Guaranty, Defendants Kane and Kochis agreed to personally and unconditionally, jointly, and severally:

    i.    guarantee that each Restaurant would punctually pay when due all amounts required to be paid under the Agreement and perform each and every undertaking, agreement, and covenant set forth in the Agreement; and

    ii.    agree to be personally bound by, and personally liable for, the breach of each and every provision in the Agreement, and to pay any and all expenses (including reasonable attorney's and accountant's fees and expenses) incurred by PMC in enforcing any rights under the Guaranty.

**B.**    **<u>Default and Termination of the License Agreements and the Temporary License</u>**

54.     On May 4, 2018, PMC provided CLC with a Notice of Default letter (the "May 4, 2018 Notice") in accordance with Section 19. of the Agreements and informing Defendants that they were in default of certain obligations under the License Agreements.   Per the Notice, Defendants were in default of Section 8.C. ("Approved Products, Distributors and Suppliers") for using unapproved products in the Restaurants, namely turkey and pork chops.   A true and correct copy of the May 4, 2018 Notice is attached hereto as **Exhibit 4**.

55.     In addition, the May 4, 2018 Notice highlighted that Defendants were in default of Sections 7. and 9. of the Agreements due to failures to pay royalties and contributions to the Marketing Fund.   In accordance with the License Agreements, the May 4, 2018 Notice informed Defendants that their Agreements would terminate thirty (30) days from the date they received the Notice unless all past due amounts were paid on or before the termination date.

56.     The License Agreements terminated on June 5, 2018.   That same day, Defendant Kane drove to Memphis to meet with a team of PMC representatives to discuss CLC and Defendants' defaults under the License Agreements.   During the meeting in Memphis, the

Parties reached an understanding that PMC would (i) permit CLC to hold a temporary license to continue operating the Restaurants as Perkins restaurants so long as certain conditions were met, and (ii) consider reinstating the terminated License Agreements subject to certain conditions, including providing financial statements for each Restaurant, becoming current with royalty and Marketing Fund contributions, and obtaining documents related to equipment vendors and ongoing remodels.

57.     On June 8, 2018, Dave Blouin, Vice President of Franchise Operations of PMC, sent a Letter of Understanding to CLC outlining the basic elements of the agreement reached during the June 5 meeting to allow CLC to temporarily continue operating the Restaurants.  The Letter of Understanding reiterated PMC's commitment to helping Defendants define success and guide them in their business, and it also memorialized the understanding that all terms in the License Agreements that were not specifically modified by the provisions in the letter were incorporated by reference.  A true and correct copy of the Letter of Understanding is attached hereto as **Exhibit 5**.

58.     Next, on October 25, 2018, PMC sent a letter to CLC providing notice of CLC's repeated breaches of the License Agreements, as incorporated into the temporary license agreement.  A true and correct copy of the October 25, 2018 letter from PMC to CLC is attached hereto as **Exhibit 6**.  The letter listed the following ways in which CLC was breaching the temporary license and stated the required action for each item:

(1)     CLC was delinquent on payments in the amount, at that time, of $190,000 (not including the amounts which PMC agreed to defer);

(2)     Reconstruction of certain parts of the Boardman, Canton, Grove City, and Austintown Restaurants that had not been timely completed;

(3)     Insufficient or nonexistent training;

(4)        Continuing to purchase from non-approved vendors or suppliers and selling unapproved products;

(5)        Failing 16 quality assurances ("QAs"), including 4 failures for food safety;

(6)        Continuing to run unapproved "specials;" and

(7)        Failure to timely and appropriately address guest complaints.

59.    The letter dated October 25, 2018 from PMC warned CLC that failure to cure the defaults for past due monies owed or failure to pay the weekly royalty payment on time would result in termination of the temporary license.

60.    Over the next few months, CLC attempted to address PMC's notices and requirements and remedy is breaches.  PMC, in good faith, and in reasonable reliance on Defendants' purported good faith, endeavored to continue the Parties' business relationship under temporary license, with the terms of the License Agreements incorporated therein.

61.    However, on May 17, 2019, Jeff D. Warne, President & CEO of PMC, sent a letter to CLC and Defendant informing them of PMC's grave concerns regarding the Pennsylvania Bureau of Food Safety and Laboratory Services' temporary closure of the Grove City - W. Main Street, PA Restaurant due to a number of health and safety deficiencies, some of which related to construction that had dragged on for a year.  The letter further detailed how the Restaurant's closure resulted in unfavorable media coverage, which raised concerns of harm to PMC's goodwill, and other Perkins restaurants in the region. In addition, the letter provided notice to CLC and Defendant Kane that the temporary license agreement was in jeopardy and proposed that the Parties meet to discuss CLC's continued deficiencies.  A true and correct copy of the May 17, 2019 letter is attached hereto as **Exhibit 7**.

62.    Finally, on June 3, 2019, PMC provided CLC and Defendant Kane with a Notice of Termination of Temporary License letter for all Restaurants (the "June 3 Notice of

Termination") and, on June 4, 2019, issued a De-Identification letter (the "De-Identification Letter") pursuant to Section 16 of the License Agreements.  True and correct copies of the June 3 and 4, 2019 letters are attached hereto as collective **Exhibit 8**.

63.     The June 3 Notice of Termination summarized the Parties' correspondence and course of dealing as discussed above and stated that, as a result of CLC's failure to meet the conditions set forth in the Letter of Understanding, including the failure to pay amounts owed to PMC, PMC was terminating the License Agreements, as incorporated into the temporary license. As of the date of the June 3 Notice of Termination, Defendants owed to PMC:

| (1) | Royalties | $742,913.29; |
|-----|-----------|--------------|
| (2) | Deferred Royalties | $757, 656.50; |
| (3) | Marketing Contributions | $609,934.65; |
| (4) | Transfer Fees | $54,000.00. |

The June 3 Notice of Termination reminded CLC and Defendant Kane that Sections 15. and 16. of the License Agreements governed the obligations of CLC and that Defendants Kane and Kochis, as guarantors, owed to PMC as a result of the termination.

64.     Likewise, the De-Identification Letter reminded Defendants of their post-termination obligations, e.g., that Section 16. of the License Agreements requires CLC to pay to PMC all sums due and owing within 15 days of termination.

65.     Furthermore, Section 16 of the License Agreements requires CLC to:

(1) **immediately** cease identifying itself as a current or former Perkins restaurant, or as a licensee, or use any trademark or colorable imitation thereof;

(2) remove from the premises the oversized American flag and bakery display cases;

(3) remove from the premises and discontinue using all signs, flags, menus, fixtures, furniture, furnishing, equipment, advertising, materials, stationery supplies, forms

or other articles that display or contain any trademark or that otherwise identify or relate to a Perkins restaurant;

(4) remove all marks that are affixed to uniforms or cease to use all uniforms that have been used at the restaurants;

(5) take such action act may be required to cancel all fictitious or assumed name registrations related to CLC's use of any trademark

(6) change the telephone numbers of the restaurants;

(7) terminate or assign to PMC any website that identified CLC as currently or formerly associated with PMC or that displays any Mark, as well as any domain names of such websites;

(8) take such action to alter the physical interior and exterior décor of the Restaurants (specifically including, but not limited to, removing distinctive architectural features of or on the buildings as well effectively de-identify and distinguish the premises from the Perkins restaurant system; and

(9) furnish to PMC, within 30 days after the effective date of termination, evidence satisfactory to PMC or CLC's compliance with the foregoing obligations.

66.     To that end, PMC also reminded CLC of its need to schedule personnel to visit the Restaurants to ensure compliance with the de-identification obligations and requested information regarding CLC's plans, including a timeline, to de-identify the facilities.

**C**.     **Violation of CLC's Post-Termination Obligations and Irreparable Harm to PMC**

67.     After receiving the June 3 Notice of Termination and the De-Identification Letter, Defendants did not comply with their contractual post-termination obligations.

68.     Under Section 16.B. and the Guaranty of the License Agreements, Defendants were required, jointly and severally, to pay to PMC all sums due and owing on or before June 18, 2019.

69.     Defendants have materially breached their obligations as provided by Section 16.B. and the Guaranty by failing to make any such payment.  As of the date of the filing of this Complaint, Defendants remain in default, and PMC has not received any such payment.

4845-9036-8411v6
2012648-000004

70.    In addition, upon information and belief, Defendants are in breach of their post-termination obligations, in violation of Section 16 of the License Agreements.

71.    Specifically, CLC continues to operate all twenty-seven (27) Restaurants as Perkins Restaurants, thereby using misappropriating PMC's System and Confidential Information and infringing upon PMC's Marks for their own benefit and in direct competition with other Perkins corporate and franchise restaurants.

72.    In fact, each of the twenty-seven (27) Restaurants is still listed on internet search engines and social media websites as a Perkins Restaurant and is open for business; each of the twenty-seven (27) Restaurants continues to use the phone number associated with it when CLC was operating under the License Agreements; and, upon information and belief, neither CLC nor Defendants Kane and Kochis have taken any steps to de-identify in any of the required methods contained within Section 16. of the License Agreements.

73.    PMC has a substantial interest in preventing Defendants from misappropriating its System and Confidential Information and infringing upon its Marks.

74.    It is vitally important to the Perkins franchise system, and all other authorized Perkins licensees/franchisees, that Defendants not be allowed to operate Perkins restaurants without authorization and in direct competition with authorized Perkins license/franchise owners using the System, Confidential Information, and Marks provided to Defendants by PMC.

75.    By continuing to operate Perkins restaurants without authorization, PMC has no oversight or recourse over any violations or infringements of the specifications, standards, and procedures, and the compliance with laws and good business practices as required by the License Agreements.

4845-9036-8411v6
2012648-000004

76.     PMC has no means of enforcing the post-termination restrictive covenants and obligations of the License Agreements other than to seek temporary and permanent injunctive relief.

## IV.     CAUSES OF ACTION

## COUNT ONE – BREACH OF CONTRACT AGAINST ALL DEFENDANTS

77.     PMC incorporates each preceding paragraph as if fully stated herein.

78.     When CLC signed the License Agreements and Defendants Kane and Kochis signed the Guaranties, binding and enforceable contracts were formed.

79.     Due to the continuous material breaches described herein, PMC terminated the License Agreements.

80.     After the License Agreements terminated, the Parties entered into the temporary license agreement in June 2018, and all terms contained in the License Agreements which were not specifically modified by the provisions of the June 8, 2018 Letter of Understanding were expressly incorporated by reference.

81.     Due to CLC's continuous breaches over the course of the License Agreements and the temporary license, PMC properly terminated the temporary license on June 3, 2019, pursuant to the terms of the License Agreements incorporated therein.

82.     Defendants have materially breached the post-termination obligations of the License Agreements by failing to pay to PMC all sums due and owing within 15 days of the termination of the License Agreements for all twenty-seven (27) Restaurants, as incorporated into the temporary license, and failing to:

> (1) **immediately** cease identifying itself as a current or former Perkins restaurant, or as a licensee, or use any trademark or colorable imitation thereof;
>
> (2) remove from the premises the oversized American flag and bakery display cases;

(3) remove from the premises and discontinue using all signs, flags, menus, fixtures, furniture, furnishing, equipment, advertising, materials, stationery supplies, forms or other articles that display or contain any trademark or that otherwise identify or relate to a Perkins restaurant;

(4) remove all marks that are affixed to uniforms or cease to use all uniforms that have been used at the restaurants;

(5) take such action act may be required to cancel all fictitious or assumed name registrations related to CLC's use of any trademark

(6) change the telephone numbers of the restaurants;

(7) terminate or assign to PMC any website that identified CLC as currently or formerly associated with PMC or that displays any Mark, as well as any domain names of such websites;

(8) take such action to alter the physical interior and exterior décor of the Restaurants (specifically including, but not limited to, removing distinctive architectural features of or on the buildings as well effectively de-identify and distinguish the premises from the Perkins restaurant system; and

(9) furnish to PMC, within 30 days after the effective date of termination, evidence satisfactory to PMC or CLC's compliance with the foregoing obligations.

83.     Moreover, Defendants' continued unauthorized operation of Perkins restaurants and misappropriation of its System, Confidential Information, and Marks beyond termination violates the restrictive covenant not to compete in Section 16.A. of the License Agreements.

84.     As a direct, proximate, and foreseeable result of these breaches of contract, PMC has suffered and, absent equitable relief, will continue to suffer actual damages, including but not limited to lost revenues and profits in amounts presently incalculable, and irreparable harm, including but not limited to loss of franchise opportunities, loss of customers, goodwill, and confidential information, for which PMC has no adequate remedy at law.

85.     For these reasons, PMC seeks to immediately enforce the injunctive relief as agreed upon by the Parties in Section 18.D. of the License Agreements.

86.     PMC seeks all compensatory damages allowed by law or under the offer letters in an amount no less than $2,164,504.44, exclusive of interest and costs.

87.     As a result of Defendants' material breaches of the License Agreements and the temporary license as described herein, the extent of the damages to PMC, including but not limited to its System, Confidential Information, Marks, and goodwill, is uncertain and/or difficult to quantify.   Accordingly, PMC seeks liquidated damages under Section 15. of the License Agreements equal to the monthly average of the royalty fees and Marketing Fund contributions paid during the term of the License Agreements and temporary license, multiplied by thirty-six; or, in the event that PMC is unable to determine the amount payable by reason of Defendants' failure to submit some or all of CLC's Gross Sales, PMC may estimate the Gross Sales for the applicable period described above for the purpose of computing the amount payable to PMC by Defendants.

88.     Under Section 18.F. of the License Agreements, PMC is also entitled to recover its costs and expenses.

## COUNT TWO – INFRINGEMENT OF A FEDERALLY-REGISTERED TRADEMARK AGAINST ALL DEFENDANTS

89.     PMC incorporates each preceding paragraph as if fully stated herein.

90.     Since registering its trademarks, PMC has extensively advertised its Marks in connection with the Perkins franchised businesses.

91.     PMC's Marks are famous and well-known within the restaurant services and bakery services industries and to the general public throughout North America.

92.     Defendants' right to use the PMC Marks derived solely from the License Agreements and their terms, which the temporary license expressed incorporated.

93.     The License Agreements and temporary license were properly terminated.

4845-9036-8411v6
2012648-000004

94.     CLC has infringed upon PMC's federally-registered Perkins Marks in interstate commerce by various acts, including and without limitation, continuing to operate Perkins restaurants under the Perkins Marks, which are the same and/or confusingly similar to PMC's federally-registered Perkins Marks.

95.     Defendants' uses of the Perkins Marks for the operation of its restaurants is without PMC's permission or authority and is likely to cause confusion, to cause mistake, and/or to deceive the purchasing public and also constitutes initial interest confusion.

96.     Defendants' uses of the Perkins Marks has been made notwithstanding PMC's well-known and prior established rights in the Perkins Marks with constructive notice of PMC's federal registration rights under 15 U.S.C. § 1072.

97.     Defendants' conduct constitutes infringement of the federally-registered Perkins Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

98.     Defendants' misappropriations of PMC's Marks Information are willful, malicious, or in reckless disregard of the terms of the License Agreements, which has damaged PMC's protected trademarks, trade names, and goodwill.  Thus, PMC is entitled to the damages available under 15 U.S.C. § 1117, including those for exceptional cases.

99.     Defendants' infringing activities have caused and, unless enjoined by this Court, will continue to cause irreparable injury and other damage to PMC's business, reputation, and good will in the federally-registered Perkins Marks, for which PMC has no adequate remedy at law.

## COUNT THREE – VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836, ET SEQ. AGAINST ALL DEFENDANTS

100.    PMC incorporates each preceding paragraph as if fully stated herein.

4845-9036-8411v6
2012648-000004

101.    As described in this Complaint and the License Agreements, Defendants acknowledged and agreed that PMC possesses certain confidential and proprietary information and trade secrets (defined in the Agreements as the "Confidential Information") consisting of, but not limited to:

    (1)    methods and procedures relating to the development and operations of Perkins restaurants, whether contained in the Operations Manual or otherwise;

    (2)    secret recipes and flour and other mixes, menu analysis, and methods of preparation of Products and services offered in Perkins restaurants;

    (3)    methods, procedures, and techniques for preparing, packaging, marketing, selling and delivering Products and services offered in Perkins restaurants;

    (4)    knowledge of test programs, concepts, and results relating to the planning, development and testing of the System and Products and services offered in Perkins restaurants;

    (5)    sources of purchase of food, beverages and other ingredients used by Perkins restaurants;

    (6)    marketing programs and image; and

    (7)    methods, techniques, specifications, procedures, information, systems and knowledge of and experience in the development, licensing, and operation of Perkins restaurants.

102.    PMC invested a substantial amount of money and time in developing the Confidential Information, and the Parties agreed it is a valuable asset of PMC's and includes trade secrets, all of which warranted Defendants' agreeing to prevent unauthorized use or disclosure of the Confidential Information.

103.    The Confidential Information described above is related to services offered and provided by PMC, and PMC offers and provides those services in interstate commerce.

104.    The Confidential Information is not commonly known by or available to the public; it derives economic value, actual or potential, from not being generally known to, and not

being readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure or use; and it is the subject of efforts that are reasonable under the circumstances to maintain their secrecy.

105.    The Confidential Information, in whole or in part, constitutes a "trade secret" under the Defend Trade Secrets Act, 18 U.S.C. § 1839(3).

106.    Defendants have misappropriated and continue to misappropriate PMC's System, Marks, and Confidential Information, willfully, maliciously, or in reckless disregard of the terms of the License Agreements, which has damaged PMC's well-protected trade secrets and goodwill.

107.    Despite receiving notices of the termination of the License Agreements and temporary licenses, CLC continues to operate all twenty-seven (27) Perkins restaurants by using PMC's System, Marks, and Confidential Information.

108.    As a result of Defendants' ongoing and unlawful conduct, PMC has been damaged in an amount to be proven at trial.  PMC has also suffered and will continue to suffer irreparable harm that is not compensable by money damages and may only be remedied by injunctive relief, which is available under 18 U.S.C. § 1836(b)(3).

109.    Given that Defendants' ongoing misappropriations are willful and malicious, PMC is additionally entitled to an award attorney's fees.

### COUNT FOUR – VIOLATION OF THE TENNESSEE UNIFORM TRADE SECRETS ACT, TENN. CODE ANN § 25-1701, ET SEQ. – MISAPPROPRIATION OF TRADE SECRETS AGAINST ALL DEFENDANTS

110.    PMC incorporates each preceding paragraph as if fully stated herein.

111.    The Confidential Information described herein is not commonly known by or available to the public; it derives economic value, actual or potential, from not being generally

known to, and not being readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure or use; and it is the subject of efforts that are reasonable under the circumstances to maintain their secrecy.

112.    The Confidential Information, in whole or in part, constitutes a "trade secret" under Tennessee Uniform Trade Secrets Act ("TUTA"), Tenn. Code Ann. § 47-25-1702.

113.    In continuing to operate the twenty-seven (27) Restaurants as Perkins restaurants in material breach of License Agreements' post-termination obligations, Defendants have misappropriated and continue to misappropriate PMC's System, Marks, and Confidential Information, willfully, maliciously, or in reckless disregard of the terms of the License Agreements, which has damaged PMC's well-protected trade secrets and goodwill.

114.    As a result of Defendants' ongoing and unlawful conduct, PMC has been damaged in an amount to be proven at trial.  PMC has also suffered and will continue to suffer irreparable harm that is not compensable by money damages and may only be remedied by injunctive relief, which is available under Tenn. Code Ann. § 47-25-1703.

115.    Given that Defendants' ongoing misappropriations are willful and malicious, PMC is additionally entitled to an award of attorney's fees.

## V.    PRAYER FOR RELIEF

WHEREFORE, PMC respectfully requests the following relief in its favor and against all Defendants jointly and severally:

a.    all actual, compensatory, liquidated, and/or statutory damages suffered by PMC with respect to each and every cause of action asserted herein;

b.    all immediate, temporary, preliminary, and permanent injunctive relief to which PMC is otherwise entitled to as a matter of law and equity;

c.   all costs, expenses, and attorney's fees incurred by PMC in investigating, readying, bringing, and prosecuting each and every cause of action asserted herein; and

d.   any additional relief the Court deems warranted under the circumstances.

This, the 27th day of June, 2019.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

*/s/ Eugene J. Podesta, Jr.*
Eugene J. Podesta, Jr. (Tenn. Bar. #9831)
Nicole D. Berkowitz (Tenn. Bar #35046)
W. Preston Battle IV (Tenn. Bar #35044)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
901-526-2000 (Telephone)
901-577-2303 (Fax)
gpodesta@bakerdonelson.com
nberkowitz@bakerdonelson.com
pbattle@bakerdonelson.com

*Attorneys for Plaintiff*

4845-9036-8411v6
2012648-000004

## DECLARATION OF DAVE BLOUIN

The Declarant, Dave Blouin, pursuant to Tile 28, United States Code, Section 1746, declares under penalty of perjury the following:

1.    I am over the age of 18, and I am competent to testify to the matters set forth herein.

2.    I am the Vice President, Franchise Operations of Perkins & Marie Callender's, LLC ("PMC").

3.    I am an authorized representative of PMC.

4.    Based on my personal knowledge and a review of PMC's business records, the Verified Complaint's facts and contents are true and correct to the best of my knowledge, information, and belief.

So declared on this, the _27_ day of June, 2019.

DAVE BLOUIN

4845-9036-8411v5

2012648-000004